## DANIEL AUCHENBACH v. GEO. SEIBERT ET AL.

CERTIORARI TO THE COURT OF QUARTER SESSIONS OF
BERKS COUNTY.

Argued April 21, 1888—Decided April 23, 1888.

1. The Court of Quarter Sessions has no jurisdiction to pronounce upon the qualifications of members of city councils. Section 4, article VIII., act of May 24, 1887, P. L. 224, vests that power, not in the court, but in that branch of the municipal council to which the member may be elected.

2. Whether, when a member of councils elect has been a citizen and inhabitant of the state for four years, of the senatorial district for one year, but of the ward from which he is elected for less than one year preceding his election, he is qualified, not decided.

Before GORDON, C. J., STERRETT, CLARK and WILLIAMS, JJ.: PAXSON, TRUNKEY and GREEN, JJ., absent.

No. 17 July Term 1888, Sup. Ct.; court below, March Sessions 1888.

On March 8, 1888, George Seibert and sixty-two others presented their petition representing :

That they are citizens and qualified electors of the Second ward, in the city of Reading, county of Berks, and state of

Pennsylvania; that on February 21, 1888, the third Tuesday of the said month, there was an election, at which all of your petitioners voted, held in the said city of Reading in pursuance of law for the election of city, ward and precinct officers; that among other candidates ballotted for at said election were candidates for the select council of the said city; that at the last decennial census, in 1880, the city of Reading had a population of between forty-three and forty-four thousand persons, and now has a population of between sixty and seventy thousand persons; that by § 1, article VIII., act of May 24, 1887, P. L. 224, it is, among other things, enacted as follows: " The members of select council shall have the qualifications of senators of this commonwealth, and be chosen for the term of four years."

That by § 5, article II., of the constitution of Pennsylvania, the qualifications of senators of the state of Pennsylvania are defined and prescribed as follows: "Senators shall be at least twenty-five years of age and representatives twenty-one years of age. They shall have been citizens and inhabitants of the state four years, and inhabitants of their respective districts one year next before their election," unless absent on the public business of the United States or of this state, and shall reside in their respective districts during their terms of service.

That at the said municipal election, held on the third Tuesday of February last, to wit: February 21, 1888, in the city of Reading, the qualified electors of the Second ward of said city were required by law to elect a person to serve as a member of select council for the term of four years, in pursuance of § 2 of article VIII. of the act of May 24, 1887, P. L. 224.

That the candidates for election to the select council in the Second ward, of the city of Reading, on the said third Tuesday of February, 1888, were Nathan N. Sprecher and Daniel Auchenbach, and the said Daniel Auchenbach received the largest number of votes cast and has been returned as elected as a member of the select council of the city of Reading from the said Second ward of said city.

That the said Daniel Auchenbach was not, on the said third Tuesday of February, 1888, when the said municipal election was held, qualified for election as a member of the select council of the said city of Reading from the Second ward, for the reason that he had not been an inhabitant of the district, to

wit, the said Second ward of the city of Reading, one year next before his election on the said third Tuesday of February, 1888, and had not during the said one year next before his election been absent from said district on the public business of the United States or of this state, but, on the contrary, resided in the first precinct of the Tenth ward of the city of Reading, at 56 Cotton street, until the latter part of July, 1887, when he removed from 56 Cotton street, in the Tenth ward, to a house on Muhlenberg street, between Eight and Ninth streets, in the city of Reading, in the Second ward.

That the said Daniel Auchenbach had not been an inhabitant of the ward or district which he was elected to represent in said select council, to wit, the Second ward, one year next before the third Tuesday of February, 1888, the day of his said election to select council from the said ward, but, on the contrary, had been an inhabitant of said Second ward only from the latter part of July, 1887, to the said third Tuesday of February, 1888, the election day—a period of about seven months.

That the pretended election of the said Daniel Auchenbach was undue and illegal, and the return thereof is not correct, and he is not qualified to be sworn as a member of select council of the city of Reading, for the reason that he had not been an inhabitant of the Second ward, the district to represent which in select council he was elected, for one year before his said election, as required by law.

Your petitioners respectfully pray the court to grant a rule upon Daniel Auchenbach to show cause why his election as a member of the select council of the city of Reading shall not be adjudged undue and illegal and the return thereof adjudged not correct.

This petition, verified by five of the petitioners, and accompanied by proof of service of a copy, with notice of the filing thereof, upon Daniel Auchenbach, the respondent, was the same day adjudged to be sufficient, directed to be filed, a day fixed for hearing and a rule granted upon the respondent returnable on said day, to show cause why his election as a member of the select council of said city should not be

adjudged undue and illegal, service to be made four days before day of hearing.

On March 13, 1888, the day of hearing, the respondent answered:

That true it is, as set forth in said petition, that at the municipal election, held in the said city of Reading on the third Tuesday of February last past, he was a candidate for the office of member of the select council of said city from the Second ward, and received the largest number of votes cast and was returned as elected to said office. Upon the official computation of the returns of said election having afterwards been made by the prothonotary of the Court of Common Pleas of Berks county, and his sworn assistants, in open court, as provided by law, the said court certified under its official seal, that for the said office of member of the select council from the Second ward of the city of Reading, Nathan N. Sprecher received 402 votes, and Daniel Auchenbach, this respondent, received 471 votes, they being all the persons voted for for said office, which certificate remains a matter of record in said court.

That he, the said respondent, at the time of his election to said office, was, and still is, an inhabitant of the said Second ward of the city of Reading, and, as he is advised and believes, had the qualifications of a senator of this commonwealth, as prescribed by the constitution thereof, and required by § 1 of article VIII. of the act of the general assembly of May 24, 1887, regulating, among other things, the mode of election of members of councils in cities of the fourth, fifth, sixth and seventh classes, and applicable to the said city of Reading; that he was upwards of twenty-five years of age, and a citizen and inhabitant of the state of Pennsylvania four years and upwards, and an inhabitant of the Eleventh senatorial district of the said commonwealth, consisting of the said county of Berks, in which the said city of Reading is situated, one year and upwards, next before the date of said municipal election.

That at the time of his election he was, as he is advised and believes, qualified for election as a member of the select council of the city of Reading from the Second ward, under the provisions and requirements of the said act of May 24, 1887; although true it is, as alleged in the petition, to which

this is in answer, that he had not been an inhabitant of the said Second ward for one year next before the date of the municipal election, held on the said third Tuesday of February, 1888, but removed therein from the Tenth ward, of said city, sometime during the latter part of July, 1887, which said allegation, as he is also informed and believes, is immaterial in the determination of his legal qualifications to serve in the office of select councilman, to which he was elected, and does not render his election to said office undue or illegal.

And the said respondent, for further answer in the premises, says that he is advised and believes that none of the facts set forth in the petition are such as to give the court jurisdiction under any law of this commonwealth to take cognizance of a proceeding, such as is here sought to be instituted to contest the legality of his election to the office of select councilman aforesaid. No violation of any election law of this commonwealth is alleged, either in respect to the manner of holding the election, counting or returning the votes therein, or computing and declaring the result thereof. He is further advised and believes that no inquiry as to his qualifications to serve in said office is properly cognizable by the court in this proceeding, but that such inquiry can first be lawfully instituted only by the select council of said city, it being provided in the act of May 24, 1887, aforesaid, that each branch of councils shall judge of the qualifications of its members.

Wherefore, etc.

Issue having been joined, testimony was taken in open court, wherein it appeared that the respondent at the time of said election was at least twenty-five years of age, had been a citizen and inhabitant of Pennsylvania for four years, an inhabitant of the 11th senatorial district thereof for one year, preceding his election, and had moved from the Tenth ward into the Second ward in July, 1887.

On March 31, 1888, the court, ERMENTROUT, J., filed the following opinion and decree :

Section 17, of the constitution of Pennsylvania, provides as follows: " The trial and determination of contested elections of electors of president and vice-president, members of the

general assembly, and of all public officers, whether state, judicial, municipal or local, shall be by the courts of law or by one or more of the judges thereof; the general assembly shall, by general law, designate the courts and judges by whom the several classes of election contests shall be tried, and regulate the manner of trial and all matters incident thereto." To carry out this constitutional provision, the act of May 19, 1874, P. L. 208, was passed, classifying contested elections into four classes, the fourth class clearly embracing officers of a city such as members of select and common councils. Section 16, P. L. 212, provides that "cases of the fourth class shall be tried and determined by the Court of Quarter Sessions of the Peace of the county in which the election contested shall be held." The act of assembly requires that the petition for a contest shall set out "wherein it is claimed the election is undue or illegal," and that notice "shall be served upon the person whose right of office shall be contested." It will be observed that the right of "trial and determination is a constitutional right vested in the courts and that no act of assembly can therefore in any way impair or take it away."

Our jurisdiction of this case is questioned. It is asserted that, although the law rigidly demands that a candidate for office shall have certain prescribed qualifications, the election of such candidate cannot be contested for the want of such qualifications; that the election of a person disqualified does not make the election either "undue or illegal," and that in a contested election the court are simply to determine whether the machinery of holding the election has been put in proper motion, the election held at the proper time and place and in the manner and by the proper persons as required by law, without fraud or mistake, and a correct return thereof made; that in the present case, because § 4 of the municipal act of May 24, 1887, P. L. 204, says: "Each branch of councils shall judge of the qualifications of its members, and contested elections shall be determined by the courts of law," the question of "qualifications" belongs exclusively to councils to determine.

We have already said that an act of assembly cannot override a constitutional grant of power. It follows that if the term "contested elections" embraces the question of "qualifi-

cations," the constitution gives us jurisdiction. We are of the opinion that the terms " contested elections " and " undue and illegal elections," are broad enough to include the present case, upon both reason and authority. It is the view taken by Mr. Buckalew in his commentary on the constitution of Pennsylvania, 43–4–5–6.

In Commonwealth v. Leech, 44 Pa. 334, it is said: " The authority that tries the title must have the authority to try all warrants that are made for or against it that are necessary to the decision." In the contested election of Braun, 22 P. L. J. 201, Judge EWING says: " It was intended by this section of the constitution to make all contested elections judicial matters to be decided by the court." In the contested election of McNeill, 111 Pa. 241, Justice MERCUR said: " The earlier constitution authorized each house of the legislature to judge of the 'qualifications' of its members. The present constitution changes the language and authorizes each house to judge of the ' election and qualifications' of its members. While the addition of the word 'election' may not give to the house any power which it might not have exercised under authority to judge of the ' qualifications' of its members, it clearly shows an intention not to restrict the legislative power." These words indicate that, in his opinion, either of the terms convey the same idea and are tantamount to the same thing. We, therefore, feel warranted in saying that the inquiry into qualifications is not beyond our powers. Surely the election of an alien would be illegal. He does not possess the qualifications of citizenship. So, too, the election of a minor. He does not possess the qualifications of age. So, too, of a resident of Philadelphia. He does not possess the qualifications of residence. The election of one disqualified by law must, therefore, be held to be an undue, improper, illegal election.

It is asserted that the illegality of want of qualification may be tried after the oath of office is taken. But in the Commonwealth v. Garrigues, 28 Pa. 1; Commonwealth v. Leech, 44 Pa. 332, and kindred cases, it was held that " when a statute prescribes a mode for inquiring into and determining the regularity and legality of a municipal election and the return made thereof, the remedy of the statute must be followed to the exclusion of the common law mode of redress." And it

would also follow, if the contention of the respondent is correct, that councils are the sole judges of the qualifications, the court has no power to try at all, and the remedy proposed, therefore, is useless.

Nor does our interpretation necessarily defeat the provisions of the municipal act. Where there is no contest councils may judge, but the act says " contested elections shall be determined by the courts." Councils are prima facie judges until under the law the courts are called upon to decide, and the decision of the courts must under the constitution prevail and be obeyed: Buckalew on the Constitution, 43–4–5–6.

The jurisdiction established, we pass to the question of " qualifications." Article VIII., § 1, of the municipal act of 1887, says: " Members of councils in cities of the fourth, fifth, sixth and seventh classes shall be inhabitants of the wards which they represent, and shall reside therein during their term of service. The members of select councils shall have the qualifications of senators of this commonwealth and be chosen for the term of four years, and the members of common councils shall have the qualifications of members of the house of representatives and be chosen for the term of two years." ·

To ascertain such qualifications we must refer to section 5, art. XI., of the constitution, which says: "Senators shall be at least twenty-five years of age and representatives twenty-one years of age. They shall have been citizens and inhabitants of the state four years, and inhabitants of their respective districts one year next before their election, unless absent on public business of the United States or of this state, and shall reside in their respective districts during the terms of service."

Where one statute refers to another for the powers given by the former, the statute referred to is to be considered as incorporated into the one making the reference: Sika v. Chicago, 21 Wis. 370; Kugler's Appeal, 55 Pa. 123. A reference in one act to another, incorporates into the former only the general powers and provisions of the latter, not the special ones, such only as will stand with reason and right: Jones v. Dexter, 8 Fla. 276. With these principles in view and, as was said in United States v. Freeman, 3 How. 556, keeping in view the end and purpose designed by law, let us incorporate the con-

stitutional provisions into the municipal act. In place of "senators" read members of select council. In the place of "representatives" read members of common councils. The result is a clear and positive section, without a doubtful meaning, all the parts harmonizing, the effect sensible and intelligent, the question of being an "inhabitant" and "resident" in the "district," emphasized and clear. It will then read "Members of select councils shall be at least twenty-five years of age and members of common councils twenty-one years of age. They shall have been citizens and inhabitants of their respective districts one year next before the election," etc.

Any other construction would oblige us to insert and incorporate the words "senatorial" or "representative" so as to read, "inhabitants of their respective senatorial or representative districts" and give to the word "district" in the latter part of the section, the meaning of "ward," thus giving the word "districts" two meanings. It would enable a citizen of Albany township, now in the Berks senatorial district, if otherwise qualified, to come into a ward of the city and be elected to councils, although he might not have lived more than a day in the ward to constitute him an inhabitant, and unable under the law, to cast his vote therein for any office, state, national, municipal or ward. Should, for illustration, Berks and Lebanon form but one senatorial district, the citizen from Lebanon can, after being an inhabitant in the ward for one day, be elected, when he also could cast no vote at any election therein held. An interpretation that works this result ought not and cannot be correct. The end in view, or the purpose designed, was to prescribe one year's residence, so that the citizen might acquaint himself with the people of the ward, their wants and necessities, and thus enable him intelligently to act as their representative.

And now having heard the case, and having tried and determined the controversy, we find that Daniel Auchenbach was not an inhabitant for one year of the Second ward, city of Reading, before his alleged election as member of select council from said ward, and adjudge that he was and is disqualified under the law from holding such office, and that his alleged election is undue and illegal.

The motion of the respondent to dismiss the petition is overruled, and the rule of the petitioners is made absolute.

It follows, therefore, that there is a vacancy in the office of select council aforesaid, and that an election may be had to fill said vacancy.

Thereupon the respondent took this writ, assigning in various forms of specification that the court erred:

1. In entertaining jurisdiction of the proceeding, and deciding this to be a case of contested election.

2. In finding and decreeing that there was a vacancy in the office of select councilman from the second ward of said city, and that an election might be held to fill such vacancy.

3. In adjudging the respondent to be disqualified under the law from holding said office and that his election thereto was undue and illegal.

*Mr. Louis Richards* (with whom were *Mr. F. S. Livingood, Mr. H. Maltzberger* and *Mr. Cyrus G. Derr*), for the plaintiff in error:

1. Under the act of May 19, 1874, P. L. 208, relating to contested elections, the only matter for the inquiry and determination of the court is as to "which of the candidates ballotted for received the highest number of legal votes and is entitled to the certificate of election." Sections 4, 6, 8 and 14 prescribe this to be the very end and object of the investigation in determining all cases of elections contested under its provisions. In none of the reported cases have the courts ever before undertaken to pass upon the qualifications of one duly elected to a public office, and in no proper legal point of view, can the element of qualifications be deemed to enter into the subject matter of a contested election: Nineteenth Ward Election, 1 W. N. 114; Saterlee v. San Francisco, 23 Cal. 314; Dobyns v. Weardon, 50 Ind. 298; Ellingham v. Mount, 43 N. J. (L.) 470.

2. Section 4, article VIII., of the act May 24, 1887, P. L. 225, under which act this very election was held, prescribes, in respect of councils, that "each branch shall judge of the qualifications of its members, and contested elections shall be determined by the courts of law, in such manner as shall be directed by law." The line of jurisdiction is here clearly pointed out in the same sentence. Admittedly, councils can-

not judge of the election of their members; and the courts cannot, as in this instance, prejudge the question of qualification. Any other construction of the act would render the express provision of § 4, article VIII., cited, entirely nugatory.

3. The court below intimates the unconstitutionality of the act of 1887, in so far as it undertakes to eliminate from the subject matter of an election contest the question of the qualification of the officer elected. But, Commonwealth v. Leech, 44 Pa. 332, cited to support this view, was decided before the constitution of 1874. Under the consolidation act of 1874, councils were invested with the right to try contested elections of their own members, and the decision was that the courts had no jurisdiction. Moreover, the ground of contest was fraud in the return. Ex parte Braun, 22 Pittsb. L. J. 201, goes no further than to hold that the power of councils, before the constitution of 1874, to decide upon the " election and qualifications" of their members, is now so far taken away as to vest in the courts the determination of all cases of contested elections, which we do not deny. In McNeill's case, 111 Pa. 235, a principle clearly enunciated is, that the act of 1874 provides simply a method of determining which candidate received the greatest number of legal votes and is entitled to the certificate, a definition of much significance. Besides, as to a mere matter of qualification of a person regularly elected to office, no individual or number of individuals can have such an interest in the subject as will entitle them to wage a legal contest upon it: Commonwealth v. Cluley, 56 Pa. 270.

4. Assuming, however, that the court had jurisdiction to inquire into the qualifications of the respondent, he should have been held to be duly qualified under the act of 1887. He had been a citizen of the state for four years, and an inhabitant of the 11th senatorial district, to wit, the county of Berks, for one year next preceding his election. Possessing the qualifications of a senator, and being an inhabitant of the Second ward from which he was elected to councils, he was qualified to serve as a member of the select council from that ward. The act requires of members of select councils, as to residence within the ward, nothing beyond inhabitancy at the time of the election.

*Mr. H. Willis Bland* (with him *Mr. Benj. F. Dettra* and *Mr. Henry C. G. Reber*), argued orally for the defendants in error:

OPINION, MR. CHIEF JUSTICE GORDON:

It is very clear that the Court of Quarter Sessions acted ultra vires in entering judgment of ouster against the respondent in this case. It had no jurisdiction to pronounce upon the qualification of Daniel Auchenbach as a councilman. The act of assembly vests that power not in the court, but in that branch of the municipal council to which the member may be elected. It is only in contested election cases that the court has jurisdiction, and as this jurisdiction is not one of common law it cannot be extended by implication beyond the prescriptions of the act in which it originates. Were the question before us, we might take issue with the court below on the fact of the respondent's qualification, but, as what we have said fully disposes of the case in hand, we need not pass upon an issue which is foreign to the pending controversy.

Decree reversed, and proceedings vacated and set aside.