## In re Election in East Hanover Township

*Eugene D. Siegrist,* for petitioner.

*A. Harry Ehrgood,* county solicitor, contra.

HENRY, P. J., October 13, 1939.—At the hearing under the petition filed by a taxpayer, resident and voter in said township and at said election, a duly-qualified inspector who had acted at said election testified that during said election he found two local option ballots in the booths, partly folded, but he couldn't say how marked, and he deposited these ballots in the ballot box without any knowledge of the voter and without any knowledge of the persons to whom the ballots had been handed by the election officers. This testimony was not disputed by the other election officers.

Upon the opening of the ballot box, pursuant to said petition and the subsequent order thereon, the following result appeared from an inspection of the ballots. Upon the question of the granting of liquor licenses for the sale of liquor in said township, there were 129 ballots marked with an "X" following the word "yes" on the ballot and there were five ballots marked with the word "yes" following the word "yes" on the ballot, making 134 votes cast in favor of the sale of liquor. There were 130 votes marked with an "X" following the word "no" on the ballot and there were five votes marked with the word "no" following the word "no" on the ballot, making a total of 135 votes as opposed to the granting of licenses for the sale of liquor. One ballot with the number of the ballot not detached was marked in the space following the word "yes" with the word "wet". One ballot with the number not detached was voted "yes" and one other ballot with

the number not detached was voted "no". There were four ballots with the numbers not detached but these four ballots had no markings for or against the sale of liquor.

As set forth in our opinion filed under the petition on September 30, 1939, all the formalities provided for nominations and election of candidates should be observed in the submission of questions under the local option provision of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as amended, and these would require the tearing off of the number before depositing the ballot in the ballot box, otherwise it must not be counted under the provision of section 1215 of the Pennsylvania Election Code of June 3, 1937, P. L. 1333.

The voting of one ballot as "wet" is not a compliance with the direction on the ballot itself or the Pennsylvania Election Code, supra. In said prior opinion we held that in voting on local option the voter can set forth his decision by voting "yes" or "no" *or* by putting a cross mark in the space following the words "yes" or "no". Under this construction we reach the result that 134 votes were properly marked as voting "yes" on this question of the sale of liquor and that 135 votes were marked "no" on question of the sale of liquor in said township. But this leaves us with two ballots which were admittedly but wrongfully deposited in the ballot box by the election official after he found them in an election booth. We do not know how these ballots were marked. Their exclusion might well change the result as found by the election officers, the county board, and by this court. Ballots found in an election booth are not voted. The action of the voter is not complete until the ballot is deposited in the box. Up to the time of depositing the ballot in the proper ballot box the voter may change his mind. These ballots may have been left in the booth upon second thought by a voter with no intention of using them. Under these circumstances we are compelled to hold that neither the election board of the township, nor the county election board, nor this court can determine the expressed wish of the

voters of the township on this question of the sale of liquor, and therefore we are compelled to conclude that the said election on the question of the sale of liquor must be set aside. This is not an election contest, and the Pennsylvania Liquor Control Act, supra, and the local option provision thereof, does not provide for any contest upon this question, but under the authorities of Kittanning Country Club's Liquor License Case, 330 Pa. 311, and Greene Township Malt Beverage License Referendum Contest, 331 Pa. 536, questions of law are still for the courts, and while this case may have gone further than the suggestions of those cases, yet we think it is within the province of the court to determine whether the local election board and the county election board can make a true computation of the votes cast in this township on the question of the granting of licenses for the sale of liquor.

On the question of the granting of licenses for the sale of malt and brewed beverages we find that there were 108 votes cast and marked with an "X" following the word "yes" on the ballot and there were five votes cast marked with the word "yes" following the word "yes" on the ballot in the space provided for the expression of the wish of the voter, making a total of 113 votes cast in favor of the granting of licenses for the sale of malt and brewed beverages. Upon this question there were 125 votes marked with an "X" following the word "no" and five votes cast with the word "no" following the word "no" on the ballot, making a total of 130 votes cast against the question of the sale of malt and brewed beverages in said township.

There was one vote on this question with the number not detached and marked "yes" on the ballot. There were four ballots with the numbers not detached but there were no markings on these ballots on the question of the sale of malt and brewed beverages. There was one ballot with the number not detached and marked "yes" following the word "yes" on the question of the granting of licenses for the sale of malt and brewed beverages. The

two ballots wrongfully deposited by the inspector cannot affect the result as indicated by these returns and this computation, and, therefore, the county election board is directed to certify that 111 votes were cast in favor of the granting of licenses for the sale of malt and brewed beverages and that 128 votes were cast against the granting of licenses for the sale of malt and brewed beverages. This will eliminate the invalid votes wrongfully deposited in the ballot box.

The county election board is further directed to certify that no lawful and true computation can be made of the vote cast at said election upon the question of the granting of licenses for the sale of liquor and that the said election is set aside under this ruling of the court.