620 A.2d 565

### In re: GENERAL ELECTION FOR TOWNSHIP SUPERVISOR OF MORRIS TOWNSHIP, WASHINGTON COUNTY, Pennsylvania

James H. Cole, Dorothy S. London, Joseph C. London, Herbert G. Lindley, Maryann F. Stockdale and William P. Shriver, Appellants,

### In re: OPENING OF BALLOT BOX OF MORRIS TOWNSHIP, WASHINGTON COUNTY, Pennsylvania,

Appeal of Catherine T. COLE, Opal M. Shriver and John M. Lindley, Appellants.

Commonwealth Court of Pennsylvania.

Argued Oct. 20, 1992.

Decided Jan. 13, 1993.

592

---

Jerome Hahn, for appellants.

No appearance, for appellees.

Before DOYLE and PALLADINO, JJ., and SILVESTRI, Senior Judge.

DOYLE, Judge.

These are appeals from two orders of the Court of Common Pleas of Washington County which dismissed both a Petition for Allowance of an Election Contest Nunc Pro Tunc, and a Petition to Open a Ballot Box and for a Recount. This Court ordered the appeals to be consolidated by an order entered April 15, 1992.

William P. Shriver was a candidate for the office of Township Supervisor of Morris Township, Washington County in the general election held November 5, 1991.[1] The first unofficial returns showed 170 votes for Shriver and 172 votes for his sole opponent, Wilbert L. Rutan. On November 25, 1991, The Election Board of Washington County (Board) informed Shriver that the computation completed that day showed a tie vote of 172 votes for each candidate. The Board further informed Shriver that he would have to cast lots in the Board office on Tuesday, December 3, 1991, at 12:00 noon, to determine the winner of the election pursuant to Section 1418 of the Pennsylvania Election Code (Code), Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. § 3168.

On Monday, December 2, 1991, the County Board of Elections made the final certification of the returns. At the appointed hour on Tuesday, December 3, 1991, both candidates appeared at the Bureau and drew lots; Rutan won the draw.

On February 27, 1992, certain Electors[2] simultaneously filed a "Petition for Allowance of Election Contest Nunc Pro Tunc" and a "Petition to Open Ballot Box and Recount Votes"[3] with the court of common pleas. By two orders filed

1. Washington County uses the punch-card system of voting. By this method an individual voter receives a blank punch card in an envelope and enters the voting booth. The voter then inserts the card into a machine and votes for individual candidates by punching a small hole in the card which the machine relates to the individual party or candidates. After the voter has completed the voting, the card is ejected. The voter then seals the card in an envelope and inserts it into a locked ballot box. Following the close of voting, the ballot boxes are taken to the election bureau from the polling station, where the cards are extracted from the ballot boxes and fed through a counter. An unofficial count is then available after all the cards have been counted.

2. James H. Cole, Dorothy S. London, Joseph C. London, Herbert G. Lindley, Maryann F. Stockdale and William P. Shriver filed the Petition for Election Contest Nunc Pro Tunc. Catherine T. Cole, Opal M. Shriver and John M. Lindley filed the Petition to Open the Ballot Box and Recount. We refer to these two groups collectively as Electors.

3. The Petition for Allowance of Election Contest Nunc Pro Tunc was filed pursuant to Section 1756 of the Code, 25 P.S. § 3456. The Petition to Open Ballot Box and Recount Votes was filed pursuant to section 1701 of the Code, 25 P.S. § 3261.

March 2, 1992, the court denied both the petitions for lack of jurisdiction because they were untimely filed. Appeal of both orders to this Court followed.

The sole issue for our review is whether the trial court was correct in dismissing the Electors' petitions for lack of jurisdiction because they were untimely filed.

Initially, the Electors contend that their petition to establish an election contest should have been granted nunc pro tunc because the Board certified the returns without complying with the Code's requirement that at least five days must elapse between the completion of the computation of the votes and the final certification under Section 1404(f) of the Code, 25 P.S. § 3154(f), which provides in pertinent part:

At the expiration of five days after the completion of the computation of votes, in case no petition for a recount or recanvass has been filed in accordance with the provisions of this act ... the county board shall certify the returns so computed in said county in the manner required by this act. . . .

Here, the completion of the computation of the votes occurred on November 25, 1991, and the final certification of the votes was made on December 2, 1991. Thus, seven days elapsed between the completion of the computation of the votes and the final certification, and Electors' claim that the Bureau improperly certified the returns is without merit.[4]

■ The analysis of the common pleas court's dismissal of the election contest petition must begin by determining how

4. Electors additionally assert that the Board did not comply with Section 1418 of the Code, governing the procedures to be utilized in the case of a tie vote. Section 1418 provides, in pertinent part, that:
In any case where the fact of a tie vote is not authoritatively determined until after the third Wednesday after the election, the time for casting lots shall be 12 o'clock noon of the second day after the fact of such tie vote is authoritatively determined.
25 P.S. § 3168. The third Wednesday after the election of November 5, 1991, (a Tuesday), would have been November 20, 1991. In this case, final certification of the returns was made on December 2, 1991, authoritatively determining a tie vote. The lots were drawn at 12:00 noon the following day, December 3, 1991, so that substantial compliance with the Code was provided.

such a petition is properly filed pursuant to the Code. A contest for the office of township supervisor is classified as a class five election contest by Section 1711 of the Code, 25 P.S. § 3291. A petition for an election contest of the fifth class must be filed "within twenty days after the primary or election...." Section 1756 of the Code, 25 P.S. § 3456. Electors' election contest petition was filed on February 27, 1992, almost three and a half months after the election, and is, therefore, clearly untimely. The Code further requires that:

> [Election] [c]ases of the fifth class shall be tried and determined upon petition of twenty registered electors, as hereinafter provided, by the court of common pleas of the county in which such contested election was held.

Section 1751 of the Code, 25 P.S. § 3431. Electors' petition was signed by only six electors. The common pleas court was, therefore, correct in holding that it lacked jurisdiction to consider the petition.

■ Regarding the timeliness issue, this court has held that, "[t]he timeliness of an appeal goes to the jurisdiction of the Court and may not be extended absent fraud or a breakdown *in the court's operation* due to a default of its officers." *Appeal of Orsatti,* 143 Pa. Commonwealth Ct. 12, 15, 598 A.2d 1341, 1342 (1991) (citations omitted). In *Orsatti,* we held that forged ballot signatures did not constitute a fraud or breakdown in the *court's operation.* Electors here do not allege any breakdown in the operation of the common pleas court, but rather allege a breakdown in the Board's operation. However, even that allegation as we have seen, is without substance. There is therefore no basis for nunc pro tunc relief on the facts alleged in this case.

Electors cite *Koch Election Contest Case,* 351 Pa. 544, 41 A.2d 657 (1945), for the proposition that their petition for an election contest nunc pro tunc should be granted because of alleged errors in the computation of votes. *Koch* is inapposite. In *Koch,* the election board officials themselves made a transcription error, discovered it and then failed to comply with their statutory duty to open the ballot box for a recount and publicly announce the final results pursuant to Section 1404 of

the Code, 25 P.S. § 3154. There, the Supreme Court held that the common pleas court erred in not allowing an appeal nunc pro tunc from the action of the election board after the Board clearly violated the Code. There is no indication in the record in this case that the Board committed any error or failed to comply with the Code, other than Electors' naked assertion that there was an error in the count. *In re Recanvassing of Certain Voting Machines,* 504 Pa. 593, 475 A.2d 1325 (1984), also cited as authority by the Electors, is likewise distinguishable because the procedural error asserted there was in the recanvassing petition and was the fault of the notary public, not the petitioners themselves. Here Electors do not allege that the errors in their petition are due to a third party public official.

■ We next address Electors' Petition to Open Ballot Box and Recount Votes. At this juncture a brief overview of the Election Code would be helpful. Article XIV of the Code, Section 1404, regulates the procedure for counting the votes and correcting the returns. 25 P.S. § 3154. The term "return" when used in the Code, generally refers to a sheet showing the total individual votes cast for all candidates at that polling place or district. Five days after the completion of the count of the returns from all the districts, the Board must certify the final count *unless* a petition to recount or to recanvass has been filed. Section 1404 of the Code, 25 P.S. § 3154(f).

■ A recount is the opening of a ballot box and the recount of the votes if the voting was done by paper ballots. A recanvass is the opening of a voting machine in order to check the counters inside the machine which record the number of votes cast if the voting was done by voting machines. If such a petition has been filed, the Board may not make the final certification until after the court has ruled on the petition. 25 P.S. § 3263(a)(2).

Article XVII of the Code governs the recount proceedings if the appropriate petition for recount or for recanvass has been properly filed. Section 1701 provides for the opening of ballot

boxes, 25 P.S. § 3261; Section 1702 provides for the recanvassing of voting machines, 25 P.S. § 3262; and Section 1703 covers correction of the vote under both proceedings, *i.e.*, ballot boxes where voting is by paper ballot, and voting machines where they are used, 25 P.S. § 3263.

Section 1703 was amended in 1982 to require that a petition to open a ballot box or to recanvass a voting machine must be filed no later than five days after the completion of the count. 25 P.S. § 3263(a)(1). If error or fraud is discovered the court must allow the parties another five days to file petitions to open other ballot boxes or recanvass machines before it makes final certification. 25 P.S. § 3263(a)(2).

If additional petitions to recount or to recanvass are filed under this five-day provision, the court may allow, upon petition, additional boxes to be opened or machines to be recanvassed. These additional ballot boxes must be opened within four months after the election. 25 P.S. § 3261(f). If voting machines were used, the additional machines must be recanvassed within twenty days of the election. 25 P.S. § 3262(c). In both cases the action must be taken before the court makes final certification. 25 P.S. § 3263(a)(2). Final certification of the returns, however, precludes the filing of further recount or recanvass petitions.

▮▮▮ The Electors would have us find that, based on Section 1701(f) of the Election Code, an initial petition to open and recount may be filed within four months of the election.[5] However, this argument misapprehends the function of this provision of the Code. The controlling time limitation, found in Section 1703 of the Code, requires that an initial petition to open and recount must be filed "no later" than five days after the completion of the canvassing of the returns.[6] The

---

5. Section 1701 of the Election Code provides, in pertinent part, that:
   Ballot boxes may be opened under the provisions of this section at any time within four months after the date of the general, municipal, special or primary election at which the ballots therein shall have been cast.
   25 P.S. § 3261(f).

6. The amended Section 1703 of the Code provides that:

Electors failed to comply with this provision, mandating the denial of their petition.

The Electors' interpretation of the four-month provision would render the five-day time limit for filing the initial petition to open a ballot box and for a recount completely superfluous. Such a reading of the statute contradicts the Rules of Statutory Construction which direct our Court to give effect to all provisions of a statute. Statutory Construction Act of 1972, 1 Pa. C.S. § 1921.

The statute clearly requires that a petition to open a ballot box and for a recount, standing alone, must be filed no later than five days after the completion of the computation of the returns. *Chase Appeal,* 389 Pa. 538, 133 A.2d 824 (1957). Of course, had a previous recount petition been filed and the court found fraud or error, the Electors would have had five days after the court's ruling in which to file this petition, assuming the petition was still within the four-month limit. However, there was no previous petition filed or five-day extension granted.

■ The only other way the Electors could have petitioned to have the box opened later than five days from the completion of the computation of the returns, would be if the Electors had properly instituted an election contest. Our Supreme Court explained the function of the four-month provision in the scenario of an election contest in *Horsham Township Election Case,* 356 Pa. 60, 51 A.2d 692 (1947). The Supreme Court stated:

> While at first these provisions may appear inconsistent, they are in fact not in conflict. The appeal [for an election contest] must be taken within the 20 days as as fixed by the

Any petition to open a ballot box or to recanvass the votes on a voting machine pursuant to sections 1701 and 1702 shall be filed *no later* than five (5) days after the completion of the computational canvassing of all returns of the county by the county board. If any error or fraud is found the court shall grant the interested parties an additional five (5) days to file petitions requesting additional ballot boxes to be opened or voting machines to be recanvassed.
Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. § 3263(a)(1), added by Section 5 of the Act of May 5, 1982, P.L. 374 (emphasis added).

statute. The petition to open ballot boxes, permitted to be filed within four months, may result in the production of evidence which may, or may not, cause the appeal to be sustained.

*Id.* at 62, 51 A.2d at 693. As previously discussed, the Electors failed to properly institute an election contest. Without an election contest, this Court would be without authority to order a correction of the returns.[7] Because the Electors failed to institute an election contest, the Elector's petition to open the ballot box and recount the returns, filed after the statutory five-day period, was properly denied by the common pleas court.

Based on the foregoing discussion, the orders of the Court of Common Pleas Of Washington County, No. 92–1134 and No. 92–1133, dismissing the Electors' Petition for Election Contest Nunc Pro Tunc and Petition to Open Ballot Box and Recount Votes are affirmed.

## ORDER

NOW, January 13, 1993, the orders of the Court of Common Pleas of Washington County in the above-captioned matters are hereby affirmed.

---

7. In *Chase* a petition to open the ballot box was presented after the expiration of the five-day period without the prior initiation of an election contest and the county board of electors, in error, opened the ballot boxes and recounted. In affirming the order of the common pleas court which refused to order the county board to correct the official vote based on the recounted returns, our Supreme Court held:

When the petitions to open the ballot boxes were presented appellant had already forfeited his right to an election contest by not commencing such a contest within twenty days of the election ... he cannot substitute the present type of proceeding for an election contest. By the failure to present these petitions within five days after computation and canvass of the votes the right to a correction of the returns by direction of the Court was forfeited.

*Id.* 389 Pa. at 545, 133 A.2d at 827 (citation omitted).