# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: Contest of November 7, 2023 | : | |
| Election of Towamencin Township | : | |
| | : | |
| Appeal of: Shannon L. Main, Holly A. | : | |
| Bechtel, Nancy J. Becker, David Allen | : | |
| Brady, Richard D. Costlow, George | : | |
| H. Frisch, Earl G. Godshall, Marilyn | : | |
| Godshall, Alyson Horcher, Leo F. | : | No. 1482 C.D. 2023 |
| Horcher III, Kris A. Kazmar, Michael E. | : | Argued: April 3, 2024 |
| Main, Cynthia M. Manero, Bruce C. | : | |
| Marger, Bruce R. Marger III, Kathryn | : | |
| J. Marger, Margrit D. Marino, Joseph F. | : | |
| Meehan, Richard Mullen, Karen L. | : | |
| Nuss, Thomas A. Nuss III, Beth | : | |
| Pickford, Scott E. Pickford, Delyne | : | |
| D. Rogiani, Kevin Rossi, Nicole M. | : | |
| Rossi, Janella J. Santiago, Kelly L. | : | |
| Secoda, Michael Secoda and Kristin | : | |
| R. Warner | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE LORI A. DUMAS, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**         **FILED: April 8, 2024**

      Before the Court is Appellants'[1] appeal from the December 7, 2023 Order of

---

[1] The appellants in this appeal are: Shannon L. Main, Holly A. Bechtel, Nancy J. Becker, David Allen Brady, Richard D. Costlow, George H. Frisch, Earl G. Godshall, Marilyn Godshall, Alyson Horcher, Leo F. Horcher III, Kris A. Kazmar, Michael E. Main, Cynthia M. Manero, Bruce C. Marger, Bruce R. Marger III, Kathryn J. Marger, Margrit D. Marino, Joseph F. Meehan, Richard Mullen, Karen L. Nuss, Thomas A. Nuss III, Beth Pickford, Scott E. Pickford, Delyne D. Rogiani, Kevin Rossi, Nicole M. Rossi, Janella J. Santiago, Kelly L. Secoda, Michael Secoda, and Kristin R. Warner (collectively, Appellants).

the Court of Common Pleas of Montgomery County (Common Pleas) that denied Appellants' "Petition for Election Contest *Or in the alternative*, Petition for Election Contest *Nunc Pro Tunc*" (Petition). Common Pleas determined that the Petition was untimely filed under the Pennsylvania Election Code (Code).[2] Common Pleas additionally adopted the reasoning set forth in the United States District Court for the Western District of Pennsylvania's (District Court) November 21, 2023 Order (District Court Order) in *Pennsylvania State Conference of the NAACP v. Schmidt*, Civil Action No. 1:22-CV-00339, 2023 WL 8091601 (W.D. Pa. 2023) (*Pennsylvania State Conference*),[3] to conclude there was no error in the Montgomery County Board of Elections' (Board) decision to count all of the timely received mail-in ballots of voters the Board had received, including those from Towamencin Township (Township), that had misdated or undated declarations on the outer return envelopes. Also before the Court is Kofi Osei's (Osei) Suggestion of Mootness, in which Osei argues that this appeal should be dismissed as moot because Osei has been sworn into the office of Township Supervisor, and, therefore, the relief requested by Appellants is no longer available.

## I. BACKGROUND

This appeal involves the close race for the office of Township Supervisor between Osei and Richard Marino (Marino). On December 29, 2023, this Court issued an order, followed by a memorandum opinion, denying Appellants' "Application for Relief in the Nature of a Motion for Summary Judgment/Relief or,

---

[2] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

[3] On March 27, 2024, the United States Court of Appeals for the Third Circuit in a 2-1 decision reversed the District Court Order and remanded for consideration of the equal protection claim. *Pa. State Conf. of NAACP Branches v. Sec'y* (3d Cir., No. 23-3166, filed Mar. 27, 2024), 2024 WL 1298903.

*In the Alternative*, Application for Relief in the Nature of a Request for an Emergency Preliminary Injunction" (Application). Therein, we set forth the background of this matter, which is generally not in dispute, as follows.

> On November 7, 2023, the [Pennsylvania General Municipal Election (]Municipal Election[)] was held for, *inter alia*, Township Supervisor, for which both Marino and Osei were candidates. (Joint Stipulation (Stip.) ¶¶ 1-2.) The unofficial results of the Municipal Election, as of November 14, 2023, initially showed Marino as the winner of the Township Supervisor race by four votes over Osei. (Stip. ¶ 3.) The Board initially completed the canvassing and computation of all ballots on November 14, 2023. (Stip. ¶ 4.) Pursuant to Section 1404(f) of the Code, 25 P.S. § 3154(f), the Board was required to submit the unofficial results to the Secretary of the Commonwealth (Secretary) no later than 5:00 p.m. on November 14, 2023. (Stip. ¶ 5.) The Board complied with Section 1404(f) and submitted the unofficial results of the Municipal Election to the Secretary. (Stip. ¶ 6.) No petitions for recount or recanvass were filed in relation to the Municipal Election. (Stip. ¶ 7.) The Board thereafter scheduled its certification vote for November 22, 2023. (Stip. ¶ 8.)

> On November 21, 2023, the District Court issued the District Court Order in *Pennsylvania State Conference . . .* , dismissing 55 county boards of election from the action for lack of standing, but retaining the Montgomery Board as a defendant in the action. (Stip. ¶ 9 & Exhibit (Ex.) B, at 3-4.) The District Court Order also granted in part the plaintiffs' motion for summary judgment to the extent it requested, *inter alia*, that two mail-in ballots from Montgomery County be counted for the November 2022 general election, and entered declaratory judgment in the plaintiffs' favor declaring that the rejection of timely submitted mail-in ballots based solely on the voter's failure to include a date on the outer return envelope, or a correct date thereon, violates the Materiality Provision of the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B) (Materiality Provision).[] (Stip., Ex. B, at 4.) The District Court Order further permanently enjoined the Secretary from directing any county board of elections to segregate, reject, exclude, or in any way not count timely received mail-in ballots based on such error or omission regarding the date on the voter's declaration, dismissed the plaintiffs' equal protection claim, and granted in part and denied in part other relief requested by other parties in the case. (Stip., Ex. B, at 5.)

Pursuant to the District Court Order, on November 22, 2023, the Board issued a public statement postponing its certification to canvass six mail-in and absentee ballots it had previously determined to be defective and void for lack of a date or an incorrect date. (Stip. ¶ 10 & Ex. C.) The ballots were opened on November 27, 2023, in the presence of candidates or their designated representatives, and, as a result, Marino and Osei each received 3,035 votes.[] (Stip. ¶ 11.) The Board announced these new unofficial results on November 28, 2023, and, on November 30, 2023, Marino and Osei drew lots pursuant to Section 1418 of the Code, 25 P.S. § 3168, which resulted in Osei being declared the winner of the Municipal Election for Township Supervisor. (Stip. ¶¶ 12-13.) The Board thereafter certified the results on December 4, 2023, and Appellants filed their Petition on that same date. (Stip. ¶¶ 14-15.)

On December 5, 2023, Osei filed an "Unopposed Petition to Intervene" and a "Demurrer and Application to Quash" in Common Pleas, alleging that Appellants' Petition was both time-barred and substantively deficient, and that the Board correctly complied with the District Court Order. (Stip. ¶ 16; Original Record (O.R.) at 54-56, 57-72.) By order dated December 5, 2023, Common Pleas granted Osei intervention, observed that the "Demurrer and Application to Quash" was filed of record, and noted that the court only addressed intervention and not the merits of the matter at issue. (*See* O.R. at 73.)

On December 7, 2023, Common Pleas' Order was issued, denying Appellants' Petition, dismissing the case, and adopting by reference the reasoning of the District Court Order. (Stip. ¶ 17 & Ex. D.) Appellants filed their notice of appeal to this Court on December 12, 2023. (Stip. ¶ 18.)

Common Pleas thereafter issued an Opinion on December 20, 2023, explaining its reasoning for its December 7, 2023 Order. (Stip. ¶ 17 & Ex. E.) Noting the above facts, Common Pleas opined that Appellants' appeal should be denied because no appeal was filed within the two-day period set forth in Section 1407(a) of the Code, 25 P.S. § 3157(a); no recount or recanvass of the results of the election for Township Supervisor was requested within the time period allowed under the Code, *see* Sections 1701-1703 of the Code, 25 P.S. §§ 3261-3263; the Petition was untimely filed; and no application to appeal nunc pro tunc was granted. (Common Pleas' Opinion (Op.) at 1-2.) Common Pleas further observed that its decision to uphold the counting

4

of the 349 ballots at issue complied with applicable federal law on the subject, namely, the District Court Order. (*Id.* at 2; *see also* Stip., Ex. C.) Relying on that decision and the United States Court of Appeals for the Third Circuit's (Third Circuit) recent decision in *Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022), *petition for writ of certiorari granted*, *judgment vacated*, *Ritter v. Migliori*, 143 S. Ct. 297 (2022),[] both of which held that failure to comply with the dating provisions of Sections 1306(a) and 1306-D(a) of the Code, 25 P.S. §§ 3146.6(a)[, added by the Act of March 6, 1951, P.L. 3,] and 3150.16(a)[, added by the Act of October 31, 2019, P.L. 552], is not a material defect under the Materiality Provision and thus could not prevent the counting of those ballots, and the Supremacy Clause of the United States Constitution, U.S. CONST. art. VI, cl. 2, Common Pleas explained that it found the Board properly counted the mail-in ballots at issue in this case pursuant to the District Court Order. (Common Pleas' Op. at 3.) Common Pleas therefore opined that it properly dismissed Appellants' Petition. (Common Pleas' Op. at 3.)

*In re: Contest of Nov. 7, 2023 Elec. of Towamencin Twp.* (Pa. Cmwlth., No. 1482 C.D. 2023, filed Dec. 29, 2023) (Cohn Jubelirer, P.J.) (single-judge op.) (*In re Contest I*), slip op. at 6-9 (footnotes omitted).

After filing their appeal from Common Pleas' Order, on December 23, 2023, Appellants filed the Application, seeking both injunctive relief and summary relief directing the Board (1) to certify Marino, who is not a party to this action, the winner of the Municipal Election for Township Supervisor, and (2) to decertify Osei as the winner of that office. *In re Contest I*, slip op. at 3. Appellants subsequently altered their requested relief to a temporary emergency injunction enjoining Osei from assuming office as Township Supervisor pending resolution of their appeal. *Id.* Following argument on December 28, 2023, the Court concluded that Appellants failed to meet the stringent requirements for a stay and/or injunction pending appeal under Pennsylvania Rule of Appellate Procedure 1732(b), Pa.R.A.P. 1732(b), and denied the Application. On January 2, 2024, Osei was sworn in as Township Supervisor and, as of that date, began voting on substantive matters. (Osei's

5

Suggestion of Mootness at 1.) Thereafter, Osei filed the Suggestion of Mootness, asserting that the appeal is now "moot in all regards and must be dismissed" because the requested relief, the certification of Marino as the winner, can no longer be granted.[4] (*Id.*)

The parties have filed briefs addressing the timeliness of the Petition, the merits of the Petition, and the Suggestion of Mootness, and the Secretary and the Pennsylvania Department of State (together, Amicus) have filed an amicus brief setting forth their position on these issues. The Court heard argument on April 3, 2024, and this matter is now ready for disposition.

## II. THE TIMELINESS OF THE PETITION

### A. *The Parties' Arguments*

Appellants argue the Petition "should be deemed timely" filed due to the Board's unlawful failure to comply with the Code's certification requirements and unlawful canvassing of six ballots they assert were "illegal" as of the November 7, 2023 Municipal Election day. (Appellants' Brief (Br.) at 4, 9.) They assert that on the 20th day following the Municipal Election, November 27, 2023, "there was nothing for Appellants to contest," nor could they "swear by affidavit or prove that the [e]lection 'was illegal and the return thereof not correct.'" (*Id.* at 9 (quoting

---

[4] By Order dated February 1, 2024, the Court held the Suggestion of Mootness and Appellants' answer thereto in abeyance and stayed the appeal pending resolution of *Pennsylvania State Conference* by the Third Circuit, as requested by Appellants. (Order, 2/1/2024.) However, the Court granted the Board's Application for Reconsideration on February 13, 2024, and vacated the February 1, 2024 Order. Additionally, the Court directed the appeal and the Suggestion of Mootness to be argued before a special panel of judges on an expedited basis in accordance with Sections 112(b) and 258 of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §§ 69.112(b), 69.258.

Section 1756 of the Code, 25 P.S. § 3456[5]).)  This is because, Appellants argue, the alleged illegal action by the Board, which was the actual recanvassing of the six ballots, did not occur until November 27, 2023, after the 20-day period had lapsed. Appellants contend they could not challenge the Board recanvassing within the 20-day period as a result of the Board's actions, making this matter akin to *Appeal of Koch*, 41 A.2d 657, 660 (Pa. 1945).  According to Appellants, although the Board did not certify Marino as the winner on November 21 (as it was required to do by Section 1404(a)), and announced on November 22, 2023, that it would recanvass the mail-in ballots at issue, the Board could have changed its mind, and, therefore, they maintain their failure to act based on those decisions does not bar relief.  Further, Appellants contend the Petition was filed within 20 days of November 21, 2023, and, accordingly, should be considered timely.  Additionally, they argue the Petition was not seeking to challenge the Board's decision to recanvass the mail-in ballots in question, but to contest the election based on it being illegal.  Therefore, the two-day time period to appeal from Board canvassing decisions is inapplicable, and, even if it were, the Petition is timely because they were not injured, or aggrieved, until after the election results were changed.  Alternatively, Appellants assert they are entitled to nunc pro tunc relief as they have acted diligently throughout this process and the

---

[5] Section 1756 states, in pertinent part:

> The commencement of proceedings in the case of contests of the . . . fifth class[] shall be by petition, which shall be made and filed, as herein required, within twenty days after the day of the primary or election, as the case may be.  The petition shall concisely set forth the cause of complaint, showing wherein it is claimed that the primary or election is illegal, and after filing may be amended with leave of court, so as to include additional specifications of complaint.  After any such amendment, a reasonable time shall be given to the other party to answer.

25 P.S. § 3456.

delay in their filing was not through their own fault or dereliction. Thus, they maintain this matter is more akin to *In re Petition to Contest General Election for District Justice in Judicial District 36-3-03*, 670 A.2d 629, 630 (Pa. 1996) (*In re District Justice*), and *Appeal of Koch*, than to *In re Election of Tax Collector, Horsham Township*, 51 A.2d 692 (Pa. 1947) (*Horsham Township*). Finding the Petition untimely and not finding them entitled to nunc pro tunc relief, Appellants argue, would leave them with no ability to obtain redress for their injury.

The Board, Osei (together, Appellees), and Amicus assert that there was no error in denying and dismissing the Petition on the basis that it was untimely filed whether characterized as an election contest or an appeal of the Board's decisions to not certify Marino the winner and instead to recanvass the mail-in ballots at issue. If this is an election contest, which Appellees and Amicus contend it is not given Appellants' allegations,[6] Appellants had 20 days from Municipal Election day, or until November 27, 2023, to timely file the contest, and they did not. If challenging the Board's decisions not to certify Marino and to recanvass the disputed mail-in ballots, which Appellees and Amicus contend the Petition does, given Appellants' allegations, Appellants had two days from November 22, 2023, the date the Board publicly announced its decisions, to file their challenge, and they did not. Appellees contend that Appellants' argument that they had 20 days from November 21, 2023, is unsupported by any statutory language, including Section 1756, which ties the 20-day contest period to election day, not some other day. Appellees assert that Appellants' argument that they could not file anything until the Board took an

---

[6] Amicus asserts that Appellants' allegations "fit squarely within the type of challenge that the General Assembly created under [Section 1407(a)]" and treating it as an election contest "would undo the legislature's design[,]" as "challenges to computation or canvassing decisions [have] to be brought on such a short timeline so that they can be resolved **before** final certification." (Amicus's Br. at 19 (emphasis in original).)

8

"illegal action" and issued an incorrect return, which did not occur until after the 20-day period expired, is also not supported by Section 1407. They further maintain that this argument is contradicted by the fact that the alleged "illegal actions" actually occurred prior to or on November 27, 2023, the last day of the 20-day period and after which Appellants did nothing to challenge them until December 3, 2023. That Appellants may not receive redress, Osei argues, is Appellants' own fault for not timely utilizing the paths for redress set forth in the Code.

As for nunc pro tunc relief, Appellees assert that such relief, which is more strictly applied in election cases, is not justified by the circumstances here because Appellants knew or should have known about the Board's decisions with which they disagreed weeks before they filed the Petition. Further, Osei notes that Appellants were aware of the result of the Board's decision, that Marino and Osei had the same number of votes on November 27, 2023, and could have filed a timely election contest on that day, but did not. In this regard, Appellees argue that *Appeal of Koch* is distinguishable, and a finding that nunc pro tunc relief is not warranted is consistent with *Horsham Township*. Because the Petition was untimely filed, and nunc pro tunc relief is not warranted, Appellees assert Common Pleas lacked jurisdiction to grant Appellants relief.

### B. Analysis

"The jurisdiction of the courts in election contests is not of common law origin but is founded entirely upon statute, and therefore it cannot be extended beyond the limits defined by Acts of Assembly." *In re Granting Malt Beverage Licenses in Greene Twp., Franklin Cnty.*, 1 A.2d 670, 671 (Pa. 1938). Thus, compliance with any mandatory appeal or filing period is a prerequisite to Common Pleas' ability to grant any relief to Appellants. *Appeal of Orsatti*, 598 A.2d 1341, 1342 (Pa. Cmwlth.

9

1991). *See also Pa. Dental Ass'n v. Ins. Dep't*, 516 A.2d 647, 654 (Pa. 1986) ("Periods of time set for filing appeals are jurisdictional."). "Compliance with statutorily imposed time limitations is especially important in election cases." *In re Recount of Ballots Cast in Gen. Election on Nov. 6, 1973*, 325 A.2d 303, 307 (Pa. 1974); *see also In re James*, 944 A.2d 69, 73 (Pa. 2008) (holding statutory period for filing objection petitions under the Code is mandatory). "[T]he fundamental policy reasons behind having such limitations" is that "[t]he continuing and efficient operation of government is dependent upon the prompt resolution of election contests." *Koter v. Cosgrove*, 844 A.2d 29, 33 (Pa. Cmwlth. 2004). The issue of the Petition's timeliness involves a question of law over which this Court exercises plenary review. *See Narberth Borough v. Lower Merion Township*, 915 A.2d 626, 634 (Pa. 2007) (timeliness presents a question of law; our standard of review is de novo, and our scope of review is plenary); *Brown v. Levy*, 993 A.2d 364, 365 n.1 (Pa. Cmwlth. 2010) (whether trial court erred in declining to grant nunc pro tunc relief is a question of law for which our standard of review is de novo, and our scope of review is plenary). Accordingly, if the Petiton was not timely filed, Common Pleas properly dismissed Appellants' Petition on this basis alone.

The parties dispute the proper characterization of the Petition. Appellants styled the Petition as a "Petition for Election Contest *Or in the alternative*, Petition for Election Contest *Nunc Pro Tunc*," (O.R., Item No. 0, at 1 (emphasis in the original)), and argue that it was filed as an election contest pursuant to Section 1756. Appellees and Amicus posit, and Common Pleas concluded, that the Petition, in substance, sought to appeal the Board's decisions not to certify Marino on November 21, 2023, and to recompute or recanvass the disputed mail-in ballots pursuant to the District Court Order as announced on November 22, 2023. Upon review of the

10

Petition's allegations and Appellants' arguments that the above Board decisions were in error and that it was these errors that Appellants claim caused the illegal election, we agree that the Petition, while styled an election contest, is substantially an appeal challenging the Board's decisions.

Such a challenge is authorized by Section 1407(a) of the Code, which provides in relevant part:

> Any person aggrieved by any order or decision of any county board regarding computation or canvassing of the returns of any . . . election, or regarding any recount or recanvass thereof under [S]ections 1701, 1702 and 1703[] of [the Code, 25 P.S. §§ 3261, 3262, 3263], **may appeal therefrom within two days after such order or decision shall have been made**, whether then reduced to writing or not, to the court specified in this subsection . . . .

25 P.S. § 3157(a) (emphasis added). Appeals under this section from decisions such as the one at issue here (i.e., decisions which do not result from a recount or recanvass ordered by the Secretary under Section 1404(g) of the Code, 25 P.S. § 3154(g)), are properly filed in the courts of common pleas. *Id.*

The parties do not dispute that, on November 22, 2023, the Board issued a public statement announcing its decision that it would comply with the District Court Order, which "declared that not counting ballots with a missing or incorrect date violates federal law." (Stip. Ex. C.) To do so, the Board stated it would be "postponing the certification in order [to] canvass . . . [the] mail-in and absentee ballots it had previously determined to be defective and void for lack of date or incorrectly dated." (Stip. ¶ 10.) The Board's public statement indicated it would canvass all 349 disputed mail-in ballots it had received throughout the County, including the 6 at issue in this race, on November 27, 2023, meaning it would not be certifying any candidate, including Marino, as the official winner at that time. (Stip.

¶ 10 & Ex. C.) The Board's decision at a public meeting, which included scheduling a specific **future** date for the recanvass, is a "decision of [the B]oard" for purposes of commencing the **two-day** appeal period under Section 1407(a), 25 P.S. § 3157(a). Alternatively, the actual recanvassing, which occurred on November 27, 2023, could also start the appeal period. *See Perles v. Cnty. Return Bd. of Northumberland Cnty.*, 202 A.2d 538, 539, 540 n.5 (Pa. 1964) (holding that "[t]he **counting** of [] absentee ballots" constituted the board of elections' "order" for purposes of the Section 1407(a) appeal period) (emphasis added). The December 4, 2023 filing of the Petition occurred **12** days after the Board's public statement that it would recanvass the disputed mail-in ballots, and **7** days after the actual counting occurred, rendering the Petition untimely under Section 1407(a). Such untimeliness supports Common Pleas' decision to deny and dismiss the Petition. *See Perles*, 202 A.2d at 540 n.5.[7]

Because of the untimeliness, Common Pleas lacked jurisdiction unless Appellants established that nunc pro tunc relief was warranted. Appellants argue that such relief should have been granted because the delay in filing was not due to their lack of diligence but to the fact that the alleged actions that rendered the election results illegal occurred **after** the time to file the contest expired. In this regard,

---

[7] Even if the Petition was an election contest petition as Appellants assert, it still would have been untimely. Section 1756 of the Code requires that any petition to commence an election contest of the fifth class, which under Section 1711 of the Code includes a contest of the election of an officer "elected by the qualified voters of . . . [a] township[]," 25 P.S. § 3291, "shall be made and filed, as herein required, **within twenty days after the day of the** primary or **election**, as the case may be." 25 P.S. § 3456 (emphasis added). As Section 1756 links the 20-day period to the day of the "election," *id.*, Appellants' attempt to tie that period to some other day is unsupported by the statutory language. It is undisputed that the Municipal Election occurred on November 7, 2023, thereby requiring any election contest petition to be filed no later than November 27, 2023, in order to be timely. Appellants filed the Petition on December 4, 2023, and it "is, therefore, clearly untimely." *In re Gen. Election for Twp. Supervisor of Morris Twp., Wash. Cnty.*, 620 A.2d 565, 568 (Pa. Cmwlth. 1993). Appellants' arguments to the contrary relate more to a claim for nunc pro tunc relief than to compliance with the statutory time frames and will be addressed below.

Appellants maintain they could not file anything earlier because the return was not incorrect until the lots were drawn and Osei was declared the winner. Appellees dispute Appellants' time frame, noting that numerous of the acts by the Board that Appellants contend were unlawful occurred within the 20-day period to file the election contest, meaning such contest could have been filed within that time period. Further, Appellees note, Appellants offer no reason for not timely filing the Petition within two days of the Board's decisions relating to not certifying Marino as the winner and counting the disputed mail-in ballots.

Our Supreme Court has explained that "where a petitioner does not learn of a problem with the election until the filing period has expired and his ignorance is not due to any fault or dereliction on his part . . . the petitioner [may] seek relief nunc pro tunc." *In re Dist. Justice*, 670 A.2d at 635-36 (internal quotation marks and citation omitted). Further, in determining whether nunc pro tunc relief is warranted, the Court will consider whether the petitioner is guilty of laches, which requires "lack of due diligence in pursuing a cause of action and resulting prejudice to the other party." *Id.* at 636. Finally, nunc pro tunc relief is generally only warranted where a petitioner can point to fraud or a breakdown in the administrative process on the part of the court or the election board. *Appeal of Orsatti*, 598 A.2d at 1342. "[T]hose seeking . . . nunc pro tunc [relief] in an election matter must be held to a **stricter rule** than those in a controversy between individuals[.]" *Appeal of Koch*, 41 A.2d at 660 (emphasis added).

Appellants rely on *In re District Justice* and *Appeal of Koch* to support their position that Common Pleas erred in denying nunc pro tunc relief. This reliance, however, is misplaced because in both of those cases, there was **no** reason or evidence to suspect anything was wrong with the elections at issue **before** the 20-

13

day period had expired.

We discussed *Appeal of Koch* in *In re Contest I*, describing it as follows:

There, the appellant had received a majority of the votes, and the return sheets posted outside the precincts reflected that. However, a clerical error (that the board of elections declined to correct) resulted in the candidate who won fewer votes being erroneously certified as the winner; the board of elections issued a certificate of elections to that losing candidate. **All appeal or contest periods under the Code had run by the time the appellant learned of the board's error**. The court of common pleas denied nunc pro tunc relief, reasoning that the appellant was guilty of laches for having "made no effort to acquire knowledge of the board's action until after the expiration of the statutory period[.]" [41 A.2d] at 658. On appeal, the appellant argued that the board's negligence rose to the level of fraud, in that "the general returns posted outside the polling places showed his election; that the election board failed to publicly announce the result of the election . . . thus prevent[ing] him from receiving notice of the discrepancy in time to correct it." *Id.*

Embracing the appellant's argument, the Supreme Court focused on the board's negligence in failing to carry out its statutory duties to compare sealed and unsealed returns with tally sheets to discover discrepancies, along with its failure to publicly announce the final result of the election. **It noted that had the board complied with those statutory requirements, the appellant would have discovered the issue before the statute of limitations ran.** *Id.* at 659. Noting that "those seeking . . . nunc pro tunc [relief] in an election matter must be held to a *stricter rule* than those in a controversy between individuals[,]" the Court was satisfied that the appellant was **not guilty of laches where the board's failure to perform its duties completely deprived the appellant of his only means of correcting the mistake**. *Id.* at 660 ([italicized] emphasis added).

*In re Contest I*, slip op. at 18-19 (italicized emphasis in original).

In *In re District Justice*, the appellant had received the majority of votes following the initial counting of the election day and absentee ballots, but, upon the recounting of the ballots as a result of the petition to open the ballot boxes filed by

14

his opponent **after** the 20-day period had expired, the opponent had more votes than the appellant. 670 A.2d at 632-33. However, during that recount process, it became apparent that a number of ballots had been intentionally altered, to the appellant's detriment, and it was found that this alteration had occurred while in the custody of the county board of elections. The alterations were found to be due to the county board of elections' failure to adequately secure the ballot boxes by not recording the number of the seals on the ballot boxes following the initial election day computation until the subsequent reopening of the boxes to audit the voter tallies and count the write-in votes, the number of people who had keys to the padlocks on the ballot boxes, and the number of people who had keys to the room where they were stored.

The appellant filed an election contest petition approximately two months after the election, asserting that he had not learned of the fraud or irregularities in the election until after the contest period had passed. The court of common pleas accepted the election contest petition as timely, noting that there was a breakdown in the board of elections' operation, the **tampering** of the ballots while they were in the board's custody, and the Supreme Court affirmed the application of nunc pro tunc principles. It held that "**absolutely no evidence** has been presented to show that [the appellant] had any reason **to suspect a problem with the election until** [the opponent] filed her [p]etitions to [o]pen [b]allot [b]oxes and [r]ecount [v]otes on December 1, 1993, **well past the deadline in [S]ection [1756]**." 670 A.2d at 636 (emphasis added). On the issue of laches, and whether the election contest petition could have been filed earlier, the Supreme Court noted that "[a] petitioner generally cannot delay contesting an election while recounts are being completed," but that it was "hesitant to deny a petitioner the right to contest an election **where an initial problem with the election is raised by his opponent after the time to contest has**

15

**expired**" and there was no evidence of prejudice to the opponent. *Id.* (citing *Horsham Township*, 51 A.2d at 693) (emphasis added).

Here, the bases for Appellants' claim that the election was illegal is linked to the Board's decisions not to certify Marino as the winner on November 21, 2023, in contravention, they assert, of Section 1404(f) of the Code,[8] and to recanvass the disputed mail-in ballots based on the District Court Order, which the Board announced on November 22, 2023. These actions indisputably occurred prior to the expiration of the 20-day period for filing an election contest petition, as did the actual recount of the ballots on November 27, 2023, the last day to file such petition. There is no evidence that the Board did anything to prevent Appellants from discovering the alleged errors; rather, it issued a press release publicly explaining the reason for delay of the certification, and its intent to canvass the votes in accordance with the District Court Order on November 22 following a public meeting. (Stip. ¶ 10 & Ex. C.) Thus, it cannot be said that there was "absolutely no evidence . . . to show that [Appellants] had any reason to suspect a problem with the election until" after the contest period had expired. *In re Dist. Justice*, 670 A.2d at 636. This is not a matter where the alleged actions that made the election illegal occurred in secret due to the Board's negligence and were undiscovered until after the contest period had elapsed, as was the case in *In re District Justice*. It was not a clerical error or illegal ballot

---

[8] The language relied upon by Appellants states

> [a]t the expiration of five (5) days after the completion of the computation of votes, in case no petition for a recount or recanvass has been filed in accordance with the provisions of this act, . . . the county board shall certify the returns so computed in said county in the manner required by this act[.]

25 P.S. § 3154(f). Appellants contend that, under this language, the Board had to certify the returns of the Municipal Election on the sixth day and could take no action to recanvass the ballots after that date.

16

tampering while the ballots were in the Board's custody, but an order entered by a federal court in a matter in which the Board was a party, that caused the allegations about the election which Appellants raise. Accordingly, the Court is unpersuaded that there was a breakdown in the Board's operation that caused the delay in filing the Petition that would justify granting nunc pro tunc relief.

Appellants also argue that nunc pro tunc relief was warranted because the Board could have changed its mind to recanvass the disputed mail-in ballots and they could not make the requisite averments to support the Petition until after the election results were certified. That the Board could have changed its mind is of no moment. Moreover, our Supreme Court has held that rumors of an issue with the count of ballots was sufficient to require immediate action and that the failure to take such action until the after the recount results were announced precluded nunc pro tunc relief. *Horsham Township*, 51 A.2d at 693-94. In that case, a day after the election, the appellant heard a rumor that there was a possible issue with the count. Instead of immediately going to court, she "awaited the ascertainment of the results of the ballot box opening, and then sought to file her appeal nunc pro tunc." *Id.* at 693. The Supreme Court distinguished *Appeal of Koch*, emphasizing that the appellant there, "who in fact was elected, and the public, were . . . deceived" by the board's failure to comply with the Code's notice by posting requirements. *Id.* at 694. The *Horsham Township* appellant waited for the **results** of a recount—instead of **immediately** bringing an election contest petition—and was found not to have timely filed the petition and was not entitled to nunc pro tunc relief. *Id.* at 693-94. If **unconfirmed rumors** of potential issues learned within the statutory period are sufficient to support the filing of an election challenge, *id.*, then the **public announcement** by the Board of its decisions to delay certification, thereby **not**

17

certifying Marino as winner, and to recanvass the disputed mail-in ballots on a date certain, and the completion of that canvass, are likewise sufficient, particularly where Section 1756 authorizes the amendment of an election contest petition, albeit by leave of court. 25 P.S. § 3456. However, like the appellant in *Horsham Township*, Appellants awaited the recanvassing, the announcement of the results thereof, and the drawing of the lots, and did not file their Petition until their candidate was not successful. Appellants "could have promptly proceeded, within the . . . [time period set forth in the Code], to take an appeal" or otherwise contest the Municipal Election, and in "fail[ing] to do so, . . . lost [the] opportunity to contest the election, by lapse of the statutory period[s]" and "the court is without power to aid [them]." *Horsham Township*, 51 A.2d at 693-94.

On these facts and in light of the above precedent, Appellants have not established that Common Pleas erred in not granting them nunc pro tunc relief. Because the Petition was untimely filed and Appellants have not established nunc pro tunc relief should have been granted, we discern no error in Common Pleas' denial and dismissal of the Petition on these bases.[9] These conclusions are consistent with our recognition that the time frames in the Code are there to ensure the "prompt resolution of election contests" and "the timely certification of a winner" by "afford[ing] the opportunity for challenges to be resolved prior to the time in which the winner would assume office, thereby ensuring the continuity in the operation of government." *Koter*, 844 A.2d at 33.

### III. CONCLUSION

The Court appreciates the gravity of the concerns expressed by Appellants in

---

[9] Because we conclude the Petition was not timely filed and there was no jurisdiction, we do not address mootness or the underlying merits of Appellants' Petition.

this case regarding the need for public confidence in this Commonwealth's free and equal elections. *See* PA. CONST. art. I, § 5. Relatedly, the Court takes seriously its duty to construe and apply the Code so as to maximize the elective franchise. *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 360-61 (Pa. 2020). The Court is also mindful of the General Assembly's imposition of time frames in the Code as a means of structuring the appeal and contest provisions of the Code to raise and resolve disputes **as early as possible**, consistent with the purpose of the **prompt resolution** of those disputes to **ensure the continuity in the operation of the government**. *Koter*, 844 A.2d at 33. We recognize the responsibility these time frames place on the public to act with diligence. However, "[o]ur system depends upon the timely certification of a winner" and "[t]he operation of each of [the] three branches of government would be threatened in the absence of clear time limitations for the challenging of an election." *Id.* "Allowing untimely challenges could render every [election] suspect, leaving the public who [voted], and the government body" affected by the election "continually unsure as to its status." *Id.* It is for these critical reasons that the time frames in the Code are, and must be, strictly construed and those seeking nunc pro tunc relief "held to a stricter rule" in election matters. *Appeal of Koch*, 41 A.2d at 660. Further, the Court recognizes that such time frames are jurisdictional, and, absent compliance, courts of common pleas lack jurisdiction to resolve these disputes. *In re James*, 944 A.2d at 73; *Pa. Dental Ass'n*, 516 A.2d at 654; *In re Granting Malt Beverage Licenses*, 1 A.2d at 671; *Appeal of Orsatti*, 598 A.2d at 1342.

Here, Appellants have not established that they timely filed their Petition or that they were entitled to nunc pro tunc relief, which is more strictly applied in election cases. Therefore, there was no error in Common Pleas denying and

19

dismissing the Petition as untimely. Accordingly, Common Pleas' Order is affirmed.

_____
**RENÉE COHN JUBELIRER,** President Judge

20

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

In re: Contest of November 7, 2023 :
Election of Towamencin Township :
:
Appeal of: Shannon L. Main, Holly A. :
Bechtel, Nancy J. Becker, David Allen :
Brady, Richard D. Costlow, George :
H. Frisch, Earl G. Godshall, Marilyn :
Godshall, Alyson Horcher, Leo F. : No. 1482 C.D. 2023
Horcher III, Kris A. Kazmar, Michael E. :
Main, Cynthia M. Manero, Bruce C. :
Marger, Bruce R. Marger III, Kathryn :
J. Marger, Margrit D. Marino, Joseph F. :
Meehan, Richard Mullen, Karen L. :
Nuss, Thomas A. Nuss III, Beth :
Pickford,  Scott E. Pickford, Delyne :
D. Rogiani, Kevin Rossi, Nicole M. :
Rossi, Janella J. Santiago, Kelly L. :
Secoda, Michael Secoda and Kristin :
R. Warner :

## ORDER

NOW, April 8, 2024, the Order of the Court of Common Pleas of Montgomery County, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge